UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MAN FERROSTAAL, INC. AND
RANGER STEEL SUPPLY CORP.,

               Plaintiffs,

        -against-

M/V VERTIGO, M/V ZIEMIA LODZKA,
ET AL.,

               Defendants.
-------------------------------------------------------x
-------------------------------------------------------x
MAGELLAN INTERNATIONAL
TRADING CORPORATION,

               Plaintiff,

        -against-

THE M/V VERTIGO, ET AL.,

               Defendants.
-------------------------------------------------------x
-------------------------------------------------------x
In the Matter of the Complaint of

VERTIGO MARITIME, INC., and
PRIMAL SHIPMANAGEMENT, INC., as
Owner and Manager of the M/V VERTIGO,
for Exoneration from or Limitation of
Liability
-------------------------------------------------------x

**AMENDED OPINION AND
ORDER GRANTING MOTIONS
FOR PARTIAL SUMMARY
JUDGMENT**

05 Civ. 10326 (AKH)

05 Civ. 10631 (AKH)

06 Civ. 1727 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      In the early morning of December 7, 2005, just shortly after midnight, two ships collided. The M/V Ziemia Lodzka (the "Ziemia"), a Liberian-flag freighter was sailing Southerly and Easterly from Morocco towards its destination in Poland. The M/V

1

Vertigo (the "Vertigo"), a Jamaican-flag freighter, was en route from St. Petersburg, Russia to United States ports. They collided in the Great Belt of Denmark.[1] Both ships sustained damage and the Vertigo would ultimately sink, not to be recovered until late December 2005. Its cargo, hot-rolled steel that had been loaded in Russia and Poland was damaged and the beneficial owners of that cargo, Magellan International Trading Corporation ("Magellan"), MAN Ferrostaal, Inc. ("Ferrostaal") and Ranger Steel Supply Corporation ("Ranger Steel") have filed suit against both the Vertigo and the Ziemia, and their respective owners and managers, to recover their damages.

The vessel interests, the Vertigo and the Ziemia and their owners and managers, now move for partial summary judgment for a determination that the Convention for the Unification of Certain Rules of Law with respect to Collisions between Vessels (the "1910 Convention" or "Convention"), Sept. 23, 1910, 212 Consol. T.S. 178, should apply in its entirety to the pending dispute. The determination is a critical one as application of the Convention, which provides for proportionate and several liability, may have a direct impact on the scope and manner of recovery allowed by the cargo claimants. I hold that the interests of Denmark in the outcome of this litigation predominate and thus grant the motions by the Vertigo and the Ziemia for partial summary judgment determining that the 1910 Convention applies in its entirety to the pending dispute.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On November 25, 2005 the Vertigo, a Jamaican-flag bulk vessel, commenced its voyage from St. Petersburg, Russia, bound for Texas and Louisiana and

---

[1] The Great Belt of Denmark separates the Baltic Sea to the East, and the Kattegat and Skagerrak, the Danish straits, leading to the North Sea to the West.

carrying on board a cargo of steel products loaded in Poland and Russia. The Vertigo, registered under the laws of Jamaica, was managed by Primal Shipmanagement, Inc., a corporation organized and existing under the laws of Greece, with its principal place of business in Greece. The Vertigo was owned by Vertigo Maritime, Inc., a corporation organized and existing under the laws of Liberia, but with its principal place of business in Switzerland. Cargo-Levan Schiffahrtsges Bremen (Combac) a/k/a Cargo-Levant Schiffahrtsgesellschaft Mbh (collectively "Cargo-Levant") chartered the cargo aboard the Vertigo. Cargo-Levant is a corporation organized and existing under the laws of Germany with its place of business in Germany. Of the various persons and companies having interests in the Vertigo, namely those of Jamaica, Greece, Liberia, Switzerland, and Germany, all but Liberia have enacted the 1910 Convention.

On board the Vertigo at the time of the collision was a cargo of steel products, owned by Magellan International Trading Corporation ("Magellan"), MAN Ferrostaal, Inc. ("Ferrostaal") and Ranger Steel Supply Corporation ("Ranger Steel"). Magellan, is a corporation organized and existing under the laws of the State of Illinois. Ferrostaal is a Delaware corporation with its principal place of business in Texas.[2] Ranger Steel is a Texas business entity with its principal place of business in Texas. Both Russia and Poland have enacted the 1910 Convention. The United States has not.

At about the time the Vertigo began its journey from Russia to the United States, the Ziemia, a Liberian-flag bulk vessel, commenced its voyage from Morocco to

---

[2] The Ziemia Defendants argue that MAN Ferrostaal A.G., a German entity, is the parent company of MAN Ferrostaal, Inc. and thus Ferrostaal should be deemed a German company. Ferrostaal counters that MAN Capital, a Delaware corporation with its principal place of business in New York, is the parent company of MAN Ferrostaal, and that it would be too remote to consider that a German entity is the owner of the cargo. I hold that the location of Ferrostaal in the United States and its ownership by MAN Capital, also a United States entity, are sufficient to consider Ferrostaal as an entity organized under the laws of a state of the United States, but that other interests in a conflict of laws evaluation predominate.

3

Poland. At the time of the collision, the Ziemia was owned by Ziemia One Limited, a corporation organized under the laws of Liberia. Polska Zugluga Morska (the English of which is Polish Steamship Company), an entity organized under the laws of Poland with its principal place of business in Poland, was the manager of the Ziemia. The Ziemia was chartered by Polsteam Shipping Company, organized under the laws of Greece with its principal place of business in Cyprus. Poland, Greece, and Cyprus have enacted the 1910 Convention; Liberia and Morocco have not.

In the early morning hours of December 7, 2005, as the vessels continued on their respective voyages, they passed through the narrow straits of the Great Belt of Denmark, within the islands of Langeland, Fyn, Lolland and Sjaelland, all islands belonging to Denmark. It was within that narrow and tortuous body of water, with a channel of passage in some places less than seven-tenths of a mile, that the fateful collision occurred. The area where the collision occurred is subject to the undisputed control of Danish authorities. Indeed, Denmark operates a vessel tracking system ("VTS") and tracks and reports on all accidents occurring within the Belt. (See Defs.' Ex. E.) There is no evidence that any other nation claims territorial control over the area where the collision occurred.

Both vessels sustained damage as a result of the collision, and the Vertigo ultimately sank. Although the Vertigo was re-floated and towed to Fredericia, Denmark, its cargo of hot rolled steel was damaged. Subsequent to the collision, cargo claimants, Magellan, Ferrostaal and Ranger Steel, have all filed claims in the United States District Court for the Southern District of New York as against both the Vertigo and the Ziemia. (See Magellan Compl., 05 Civ. 10326; Ferrostaal and Ranger Steel Compl., 05 Civ.

10631.) Vertigo Maritime and Primal Shipmanagement, as the owner and manager of the Vertigo, have in turn filed a separate action (06 Civ. 1727) seeking exoneration from liability or limitation of liability pursuant to the U.S. Limitation of Liability Act, 46 U.S.C. app. §§ 181-196 (2006). A separate action has been instituted in Greece against Primal Shipmanagement by the owners and managers of the Ziemia. By their answers to the complaints filed by cargo claimants in 05 Civ. 10326 and 05 Civ. 10631, the Ziemia Defendants also assert the Limitation of Liability Act as an affirmative defense.

The Ziemia Defendants, joined by Vertigo Maritime and Primal Shipmanagement as Plaintiffs in 06 Civ. 1727, move for partial summary judgment for a determination that the 1910 Convention applies in its entirety to the cargo damage actions now pending before me. MAN Ferrostaal and Ranger Steel (collectively the "Cargo Plaintiffs") oppose the pending motion for summary judgment and assert that application of the 1910 Convention is improper and would work a manifest injustice insofar as it conflicts with U.S. law concerning recovery by cargo claimants in maritime actions.

A determination of whether Danish law and the 1910 Convention, or United States law, should apply requires a careful balancing of the interests implicated by the instant litigation including an analysis of United States law and public policy. The essential question is which body of law "has the most significant contacts with the matter in dispute," Babcock v. Jackson, 191 N.E.2d 279, 282 (N.Y. 1963), and it is to this question that I now turn.

## II. STANDARD OF REVIEW

Summary judgment is warranted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although all facts and inferences therefrom are to be construed in favor of the party opposing the motion, see Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 498 (2d Cir. 2001), the non-moving party must raise more than just "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." Harlen, 273 F.3d at 499. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

A party who "intends to raise an issue concerning the law of a foreign country shall give notice by the pleadings" or in some other reasonable manner. Fed. R. Civ. P. 44.1. Questions of foreign law are treated as questions of law. Fed. R. Civ. P. 44.1. The court, in determining the applicability of foreign law, "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

**III. DISCUSSION**

*A. The Import of the Instant Dispute*

Central to the dispute between the parties as to the application of the 1910 Convention is the Convention's rule of proportionate and several liability. The Cargo Plaintiffs urge that application of the Convention's rule of proportionate liability would run directly contrary to the rules of liability applied in the United States under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. app. §§ 1300-1315 (2006), and potentially result in the denial of recovery that might otherwise be available. The vessel interests, in turn, seek to be bound by the law which will apportion fault in a manner reflective of the degree and nature, if any, of their individual negligence.

The 1910 Convention expressly provides for liability to be imposed in a manner reflective of each vessel's degree of fault. Pursuant to Article 4 of the Convention:

> If two or more vessels are in fault the liability of each vessel shall be in proportion to the degree of the faults respectively committed. Provided that if, having regard to the circumstances, it is not possible to establish the degree of the respective faults, or if it appears that the faults are equal, the liability shall be apportioned equally.

1910 Convention, Article 4. Thus, in the case presently before me, each vessel interest will be liable only to the degree and extent of their respective fault, even to the extent that one vessel may be found to be entirely innocent, and thus entirely free of any liability.

In contrast, liability in maritime actions under U.S. law is joint and several and, as such, each individual tortfeasor is liable in full for damages sustained by the plaintiff. The Atlas, 93 U.S. 302, 317 (1876). Such principle of joint and several liability is particularly critical in light of COGSA's potential grant of immunity to carrying

7

vessels in privity with the injured party, here the Vertigo. Specifically, COGSA provides that neither the carrier nor the vessel may be held liable for any loss or damage resulting from "[a]ct, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship." COGSA, § 1304(2)(a). Thus, where a relationship of privity exists as between the carrier and the cargo, the carrier will not be liable in tort, provided that the fault of the carrier in privity consists of an "act, neglect, or default … in the navigation or in the management of the ship." COGSA, § 1304(2)(a). Instead, cargo must protect its interest through the terms of its contract with the vessel, or through insurance. The interaction between this error in navigation defense and the principle of joint and several liability has given rise to the so-called "innocent cargo" rule, i.e., where cargo is precluded by operation of COGSA from pursuing claims against the carrying vessel, the cargo is relegated to its recovery as against the non-carrying vessel only.

The implications are obvious. Should I hold that the 1910 Convention does not apply, and assuming that Vertigo is entitled to the grant of immunity from liability as provided under the error in navigation defense, COGSA, § 1304(2)(a), the cargo interests will nevertheless be allowed to pursue recovery against the Ziemia only, perhaps for full recovery, and perhaps for only the Ziemia's proportionate degree of fault. In contrast, should I hold that the 1910 Convention governs and should Vertigo be entitled to the grant of immunity provided by COGSA, the cargo interests will be restricted to the percentage of fault attributed to the Ziemia in accordance with Article 4 of the Convention.

Having so framed the competing interests of the parties, and the

complicated interplay of United States and Danish law, and COGSA and the 1910 Convention respectively (and the law of other nations that are implicated in this case), I now turn, as I must, to an analysis of which interest, that of the United States in allowing for joint and several liability or that of the States having enacted the 1910 Convention in allowing for proportionate fault, predominates. I should look also to the objective intentions and understandings of the parties in order to reach a "rational and satisfactory conclusion." Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 309 (1970).

*B. Balancing the Primary Contacts*

The essential determination to be made is which interests predominate, with deference to the interest with the most substantial connection to the disputed action. Seeking to provide a methodology by which such determination may be reached in maritime tort cases, the courts have set forth several factors which should be considered in determining choice of law, see Lauritzen v. Larsen, 345 U.S. 571, 583-591 (1953); Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 308 (1970), requiring "a cold objective look at the operational contacts," rather than a mechanical application of factors. Rhoditis, 398 U.S. at 310. Here, as the analysis below shows, the relative interests of the United States, the forum, are less than those of Denmark, the location of the tort, and a proper balancing of the factors mandates application of the 1910 Convention.

1. The Relevant Case Law

The critical case addressing choice of law in maritime tort actions is the Supreme Court decision in Lauritzen v. Larsen, 345 U.S. 571 (1953). Lauritzen concerned an action by a Danish seaman against the Danish owner of a Danish vessel for injuries suffered while aboard the ship in Havana, Cuba. Id. The District Court for the

Southern District of New York and the Second Circuit Court of Appeals applied the remedies granted to seamen who sustained injury in the course of their employment as provided under the Jones Act, 46 U.S.C. app. § 688 (2006), to the exclusion of contrary Danish law. Id. at 573-74. The Supreme Court reversed the decision of the lower courts, holding instead that the interests of Denmark predominated. The case is significant, not as much for its outcome, but for its identification of the relevant criteria to be considered in such cases: (1) place of the wrongful act; (2) law of the flag; (3) allegiance of the domicile of the injured; (4) allegiance of the defendant shipowner; (5) place of the contract; (6) inaccessibility of the foreign forum; and (7) law of the forum. Id. at 583-591.

Although the seven factors outlined in Lauritzen provide guidance as to the factors relevant to a choice of law determination in maritime tort actions, a mechanical weighing of the several factors is by no means determinative. Indeed, fewer than twenty years after its decision, and again in a decision concerning the applicability of the Jones Act, the Supreme Court cautioned against mechanical applications of the Lauritzen factors:

> [E]ach factor is to be 'weighed' and 'evaluated' only to the end that, after each factor has been given consideration, a rational and satisfactory conclusion may be arrived at on the question of whether all the factors present add up to the necessary substantiality. Moreover, each factor, or contact, or group of facts must be tested in the light of the underlying objective, which is to effectuate the liberal purposes of the Jones Act.

Rhoditis, 398 U.S. at 309.

Guidance may also be drawn from Judge Stanley Fuld's seminal opinion in Babcock v. Jackson, 191 N.E.2d at 282. Although the case concerned a tort action as between a passenger of a car who sustained injuries in an accident and the driver of the

10

vehicle, the reasoning applied and the characterization of the interests to be considered is equally applicable to a maritime tort action such as the one presented here. In Babcock, Judge Fuld soundly rejected the traditional choice of law rule applied in tort actions, that the rights and liabilities resulting from a tortious act should be determined by the law of the place where the tort occurred, id. at 281, and looked instead to the "center of gravity" theory applied to contract actions under the Court of Appeals' prior decision in Auten v. Auten, 124 N.E.2d 99 (N.Y. 1954). Id. at 282. Adopting the center of gravity theory, Judge Fuld reasoned that the best result in choice of law disputes is reached, not by mechanical application of a rule favoring the law of the place where the tort occurred but, instead, "by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." Id. at 283. Under the formulation adopted in Babcock, "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." Hamilton v. Accu-Tek, 47 F. Supp. 2d 330, 336 (1999).

Thus, moving away from a formulaic application of the Lauritzen factors, and adopting the reasoning of Rhoditis and Babcock, the relevant query must take into account an honest consideration of the totality of the circumstances to determine which interest has the "greatest concern with the specific issue raised in the litigation," Babcock, 191 N.E.2d at 283, with a particular emphasis on the "parties' domiciles and the locus of the tort." Hamilton, 47 F. Supp. 2d at 336. Such interest analysis must also be tempered by consideration of the underlying objective and purpose of the conflicting laws. Rhoditis, 398 U.S. at 309.

2. The Balancing Test Applied

The factors of <u>Lauritzen</u> factors provide a beginning. The collision occurred in Denmark, a 1910 Convention nation. The laws of the flags are in conflict. The Vertigo sailed under a Jamaican flag, a 1910 Convention nation. In contrast, the Ziemia sailed under a Liberian-flag. Liberia has not adopted the 1910 Convention and instead has expressly adopted the general maritime law of the United States. The Cargo Plaintiffs, for purposes of this analysis, are deemed entities organized under the laws of the United States. The Vertigo, although operating under a Jamaican-flag, was owned by a Liberian company and managed by a Greek company. The Ziemia, operating under a Liberian-flag, was owned by Polish companies and chartered by a Cypriot company. Clearly, no one state has an interest that predominates. The place of contract, the next criterion mentioned by <u>Lauritzen</u>, was deemed to be an insignificant factor by that Court in connection with a seaman's injury, 345 U.S. at 589, and is not addressed in any detail by the parties here. The place of contracting may also differ in relation to the purchase order, the shipping documents, and the chartering of the two vessels. Again, no particular state interest can be said to predominate. The next factor, relating to the inaccessibility of the foreign forum, is not relevant to the present analysis as the vessel interests do not seek to have the case transferred to a foreign forum. As to the law of the forum, the last mentioned criterion, the United States does not follow the 1910 Convention.

Clearly the concatenation of factors set out in <u>Lauritzen</u> is confusing and inconclusive. The interests of many countries are potentially implicated, without any clear path to resolving the confusion. We might say that the interests of two countries seem paramount—the United States as the domicile of the parties suffering damage, and

Denmark, where the accident occurred and where maritime law is directly concerned with ship passage through its narrow waters. The interest analysis presented by Babcock, 191 N.E.2d at 283, is the most helpful in navigating this thicket of interests.

Here, the interest of Denmark, as the site of the accident, predominates. Denmark has a strong interest in regulating and overseeing the conduct of vessels within its waters, particularly in the precarious and narrow Great Belt. Significantly, in seeking to regulate the conduct of ships within its territorial waters, Denmark has adopted the 1910 Convention which expressly provides that damages should be distributed in a manner proportionate to each vessel's independent degree of fault. 1910 Convention, Article 4. By adopting such a rule of proportionate liability, Denmark necessarily intended to regulate the conduct of ships within its waters, making clear that all vessels passing through its waters would bear responsibility for any damages sustained as a result of its own negligence or other fault.

In contrast, the so-called innocent cargo rule applied under U.S. law, granting immunity to the carrying vessel for damage resulting from "the navigation or … management of the ship," COGSA, § 1304(2)(a), but allowing injured cargo claimants to nevertheless pursue full damages as against the non-carrying vessel, is not conduct-regulating in nature. Instead, the true intent and purpose of COGSA may more properly be characterized as regulating the relationship between parties in privity, the cargo and the carrying vessel, requiring that cargo interests protect themselves from the possible grant of immunity through their contractual agreements with the carrying vessel or by procuring insurance coverage. Thus, U.S. law places limited value on the compensatory features of tort law and, by relegating parties to suits in tort against vessels not in privity,

necessarily assumes the vagaries and varieties of different countries' tort laws. To apply such U.S. law and policy to the exclusion of Danish law which instead mandates that each vessel assume responsibility only for its own degree of fault, would work a manifest injustice and would ignore the more dominant interest of Denmark in regulating the conduct of ships within its territorial waters.

Cargo Plaintiffs urge nevertheless that application of the 1910 Convention would itself work a manifest injustice insofar as its application contradicts established U.S. law and policy regulating liability of vessels in maritime tort actions. Plaintiffs' argument in this respect fails. As noted by Chief Judge Judith Kaye in <u>Cooney v. Osgood Machinery, Incorporated</u>, 612 N.E.2d 277, 284 (N.Y. 1993), conflicts with U.S. law and policy should not be easily found:

> [P]lainly not every difference between foreign and New York law threatens our public policy. Indeed, if New York statutes or court opinions were routinely read to express fundamental policy, choice of law principles would be meaningless.

<u>Cooney</u>, 612 N.E.2d at 284; <u>see also</u> <u>Hamilton</u>, 47 F. Supp. 2d at 337-38. Here, the parties are sophisticated business enterprises that entered into shipping contracts fully aware of the risks inherent to such contracts, including the potential application of law adverse to that which would be applied in an action governed solely by the laws of the United States. That the 1910 Convention might have effect, should have been clearly apparent by the fact that the vessels were themselves affiliated with 1910 Convention nations, either by flag or ownership and, as a matter of necessity, would pass through waters controlled by Convention nations. Undoubtedly, the Cargo Plaintiffs are concerned that application of the 1910 Convention will limit the amount of damages that they might ultimately recover. Such financial concern, however, can be mitigated by

14

contract or insurance and, particularly when expressed by sophisticated parties, is insufficient to mandate a finding of conflict and preclude application of Danish law.

## IV. CONCLUSION

In accordance with the foregoing, the motion for partial summary judgment by the Ziemia and Vertigo Defendants for a determination that the 1910 Convention should apply to the instant dispute is granted. The parties should appear for a case management conference to address further proceedings in this litigation on September 15, 2006 at 9:30 A.M.

SO ORDERED.

Dated:  New York, New York
August 24, 2006

/s/ Alvin K. Hellerstein
ALVIN K. HELLERSTEIN
United States District Judge

15